IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CHANDELL RANEE BLACK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:12-CV-233 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM DECISION OF THE COMMISSIONER**

Plaintiff CHANDELL RANEE BLACK brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), who determined plaintiff was no longer entitled to supplemental security income benefits. For the reasons set out herein, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff no longer entitled to benefits be AFFIRMED.

I.
BACKGROUND

Plaintiff received supplemental security income (SSI) benefits based on disability as a child, apparently due to her attention deficit hyperactivity disorder (ADHD). (Transcript [hereinafter Tr.] 9). When she turned eighteen, plaintiff's eligibility for SSI benefits was reevaluated, and the Commissioner determined plaintiff was no longer disabled. (*Id.*). Upon plaintiff's request, the Commissioner conducted a disability hearing, after which cessation of benefits was upheld. (*Id.* at

9, 82). Plaintiff requested an Administrative Law Judge (ALJ) conduct another hearing and review the denial. (*Id.* at 9). The ALJ found claimant's disability had ceased, and she was no longer entitled to benefits. (*Id.* at 18). The Appeals Council denied plaintiff's request for review of the ALJ's decision. (*Id.* at 1). The instant federal claim, based on 42 U.S.C. § 405(g), followed.

## II.
## ISSUE PRESENTED

In a single ground of error, plaintiff contends reversal of the Commissioner's determination is warranted because "the ALJ erred in not utilizing the comprehensive vocational assessment report to limit plaintiff's RFC and determine plaintiff's ability to perform other work existing in significant numbers in the national economy." ("Plaintiff's Brief in Support of Claim," doc. 15, pg. 3 (Mar. 6, 2013)). In response, the Commissioner contends, "[a]lthough it would have been ideal for the ALJ to discuss [the report], his lack of such discussion was harmless error." ("Defendant's Response Brief," doc. 16, pg. 4 (Apr. 5, 2013)).

## III.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence in the context of Social Security determinations "is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). Provided that the correct legal standards are applied, when "substantial evidence supports the [Commissioner's] findings, they are conclusive and must be affirmed." *Id.*

## IV.
## MERITS

Plaintiff contends the ALJ erred in concluding at step five of the five-step sequential evaluation process that she is capable of performing a significant number of jobs existing in the national economy because in reaching his determination the ALJ failed to consider a "Comprehensive Assessment Report" written by a vocational counselor after evaluating plaintiff.

### A. The Five-Step Sequential Analysis

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 416.920. The burden of proof is on the claimant for the first four steps, but then shifts to the Commissioner if the analysis reaches the fifth step. *See Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir.1989). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset date, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments. *Id.* If the claimant has severe impairments that do not meet or equal the severity of a listing, the Commissioner must then assess the claimant's RFC. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). This RFC assessment is utilized in making both the step four and step five determinations. 20 C.F.R. § 416.920. At step four, the ALJ, looking to the RFC, determines whether the claimant can return to his or her past relevant work. *Id.* If the claimant cannot return to his or her past relevant work, or has no past relevant work, the burden shifts to the Commissioner (at step five) to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. *Id.*

In the case at bar, the ALJ did not make a step-one determination regarding whether plaintiff had engaged in substantial gainful activity, as such determinations are not made in age-eighteen redetermination cases. *See* 20 C.F.R. § 416.987(b). At step two, the ALJ determined plaintiff suffered from the severe impairments of "depression and attention deficit disorder." (Tr. at 11). At step three, the ALJ found plaintiff's impairments were not contained in the Listing of Impairments. (*Id.*). The ALJ then found,

> the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to understand, remember, and carry out simple tasks. She is able to respond to changes in a routine work setting.

(*Id.* at 12). Because plaintiff had no past relevant work, the ALJ proceeded to step five of the analysis, where he found plaintiff able to perform a significant number of jobs in the national economy. (*Id.* at 17). The ALJ, in reliance on the testimony of a vocational expert, specifically found plaintiff could obtain and maintain employment as a cafeteria/dining room attendant, kitchen helper/dishwasher, grocery bagger, or janitorial service cleaner. (*Id.*).

### B. The Comprehensive Vocational Assessment Report

The basis of plaintiff's appeal is a "Comprehensive Assessment Report" completed by Mr. Michael Driscoll, who is a certified vocational evaluator and rehabilitation counselor. The report is dated approximately three months before the ALJ conducted his hearing. (Tr. 23, 210-27). In the report, Mr. Driscoll made the following "recommendation": "Ms. Black would benefit with on the job training and support services of a job coach in order to establish on the job." (Tr. 218 [sic throughout]). Under a section entitled "Accommodations" Mr. Driscoll stated:

> In developing a vocational rehabilitation program with Ms. Black the following accommodations are offered for consideration in developing a rehabilitation plan:
> 1. During the course of this rehabilitation plan Ms. Black may benefit with closer than average monitoring by the rehabilitation counselor.
> 2. It will likely be helpful for Ms. Black to have job coaching services in order to enhance her expectations of success.

(*Id.* 219). Finally, in a section entitled "Functional Capacities" and under the subsection "Ability to Read and Write in English" Mr. Driscoll stated, "Ms. Black will experience difficulty with job applications, street signs, and job sources, (such as want-ads and bulletins). A job coach may be required and a very selective placement with an understanding employer." (*Id.*). Mr. Driscoll concluded plaintiff was capable of performing jobs of dog groomer, animal caretaker, bagger, groundskeeper, flower picker, and dining room attendant. (*Id.* at 220). According to Mr. Driscoll, "[t]hese jobs are both feasible and realistic."[1] (*Id.*). An attachment to the report states, "[i]t is presumed that [Ms. Black] is capable of gainful employment and achieving her maximum vocational potential with the provision of [vocational rehabilitation] services." (*Id.* at 221).

At the hearing on plaintiff's claim, the ALJ questioned a vocational expert on plaintiff's ability to acquire and maintain employment given her assessed occupational base. Plaintiff's attorney questioned the vocational expert on the recommendations made in Mr. Driscoll's vocational assessment report:

---

[1] The Court notes the report was based on the following diagnoses:

> Ms. Black's disability is: Bi-Polar Disorder. The onset occurred around the 1st grade at age 6. Ms. Black describes her disability as "problems with the bi-polar, she is always back and forth with her depression and mania, her medication helps her some and to keep focused but she still has extremeness every day."

(*Id.* at 212). At one point two years prior to Mr. Driscoll's examination plaintiff's counselor noted plaintiff was exhibiting some signs of bipolar disorder. (*Id.* at 14). The record does not, however, contain any instance where plaintiff was formally diagnosed with bipolar disorder. The only disability plaintiff was diagnosed with in first grade was ADHD. (*Id.* at 233, 277).

> Q. And what significance is it that a person would need a job coach? Is that significant to --
>
> A. Well, I used to work for the Texas Rehabilitation Commission as a counselor and I used to hire job coaches. And I would hire a job coach if the person had little or no experience in the workforce. So they didn't really know what to expect in terms of what the employer's expectations were, if they needed assistance in learning the task or staying on the task to learn the entire routine.
>
> . . .
>
> Q. And so if the person could never work without a job coach, what's the significance?
>
> A. Well, TRC does not keep a case open forever. They keep a case open until the person is employed for 60 or 90 days and then they close the case. So if a person cannot work without a job coach, they could not keep the job.

(*Id.* 40-41).

In his written decision, the ALJ referenced the vocational report in his summation of the testimony given at the hearing:

> [Ms. Black] had an evaluation because she wanted to go to cosmetology school, but she was told she would not be able to do that type of training. The evaluator told her she could possibly work as a dog groomer, flower picker, or grocery bagger. However, the claimant was told she would need a job coach at all of those jobs.

(*Id.* 13). The ALJ also stated he "considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96–2p, 96–5p, 96–6p and 06–3p." (*Id.* at 12). Despite that general statement, however, the ALJ's decision reflects no direct weighing of Mr. Driscoll's vocational report or any consideration whatsoever of the opinions and conclusions expressed in the report. (*See id.* at 9-22).

### C. The ALJ's Failure to Discuss the Vocational Assessment Report

By statutory mandate, when the Commissioner of Social Security denies a person's disability claim, the Commissioner must issue "a statement of the case . . . setting forth a discussion of the

evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1). In fulfilling this mandate, the Social Security Administration has established that in addition to evidence from medical sources, it will "use" evidence from "other sources" (such as social welfare agency personnel) "to show the severity of [a claimant's] impairment(s) and how it affects [his] ability to work."[2] 20 C.F.R. § 404.1513(d). A Social Security Policy Interpretation Ruling further discussing this regulation indicates the Commissioner "will *consider* all of the available evidence in the individual's case record," including evidence from other sources. *See* SSR 06-03 at 4 (emphasis added). It adds that opinions from such sources "are important and should be *evaluated* on key issues such as impairment severity and functional effects." *Id.* (emphasis added). Later in the same ruling, however, the Administration states,

> Although there is a distinction between what an adjudicator must *consider* and what the adjudicator must *explain* in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at 7 (emphasis added). As one can see, the interplay between the wording of the statute, regulation, and policy statement is confusing in that there is an undefined but apparent distinction between which pieces of evidence <u>must be</u> used, considered, evaluated, and/or explained versus what evidence <u>should be</u> explained.

Case law likewise indicates an ALJ need not explain in his or her written determination all evidence contained in the record. *See McFadden v. Astrue*, 465 Fed. Appx. 557, 559 (7th Cir. 2012)

---

[2] The record indicates that at the time he evaluated plaintiff Mr. Driscoll was employed by, and prepared the report on behalf of, the Texas Department of Assistive and Rehabilitative Services. The Court assumes for purposes of this Report and Recommendation that Mr. Driscoll falls under the classification of 20 C.F.R. § 404.1513(d)(3) as social welfare agency personnel.

("an ALJ may not ignore entire lines of evidence contrary to the RFC determination but she need not discuss every piece of evidence in the record") (citing *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)); *Kornecky v. Commissioner of Social Security*, 161 Fed. Appx. 496, 507-08 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) (holding an ALJ can consider evidence without directly addressing it); *NLRB v. Beverly Enterprises-Massachusetts*, 174 F.3d 13 (1st Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *NLRB v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 765 (2d Cir. 1996) (An ALJ may resolve credibility disputes implicitly rather than explicitly where his "treatment of the evidence is supported by the record as a whole"); *Penalver v. Barnhart*, No. SA-04-CA-1107-RF, 2005 WL 2137900, at *6 (W.D. Tex. July 13, 2005) ("The ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment-he need not discuss all supporting evidence or evidence rejected."); *Jefferson v. Barnhart*, 356 F. Supp. 2d 663, 675 (S.D. Tex. Mar. 12, 2004) ("in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence").

1. Was the ALJ's Failure to Discuss the Report Error?

Plaintiff asserts "the ALJ was *required* to consider [Mr. Discoll's report] and discuss the weight given thereto" ("Plaintiff's Reply Brief," doc. 17, pg. 2 (Apr. 18, 2013) (emphasis in original)), and that his failure to do so "was in violation of the regulations and SSR 06-3p" and "as such" requires remand (Plaintiff's Brief in Support of Claim," doc. 15, pg. 6 (Mar. 3, 2013)). Given the unclear nature of the statutory and/or regulatory guidance on the issue, however, the Court does not agree with plaintiff's black-and-white interpretation of the regulation's requirements nor with

plaintiff's conclusion that remand is required for no reason other than the ALJ's failure to discuss Mr. Driscoll's report. The Court will, however, assume for the sake of argument that the ALJ did err in failing to discuss Mr. Driscoll's comprehensive vocational assessment report. The Court makes this assumption in reliance on the policy that the Commissioner's determinations contain a thorough discussion of all pertinent evidence, see 42 U.S.C. § 405(b)(1); on another case out of this Court's district wherein the court found an ALJ erred by failing to discuss the opinion evidence of vocational counselors, see *Ware v. Colvin*, No. 11-CV-1133-P, 2013 WL 3829472, at *2 (N.D. Tex. July 24, 2013); and on defendant's failure to argue the point, (*see* "Defendant's Response Brief," doc. 16, pg. 4 (Apr. 5, 2013) ("[a]lthough it would have been ideal for the ALJ to discuss Mr. Driscoll's findings, his lack of such discussion was harmless error").

### 2. Was the ALJ's Error Harmless?

Even if an ALJ committed error in his or her analysis of a claimant's disability claim, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Where the resulting disability determination remains unchanged, even if some of the reasoning underlying that decision is erroneous, no substantial rights have been affected. *See id.* "The procedural improprieties alleged by [a plaintiff] will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, plaintiff has not established her substantial rights were aversely impacted by the ALJ's failure to discuss the vocation assessment report. Plaintiff describes Mr. Driscoll's statements as "'special accommodations' requirements." ("Plaintiff's Reply Brief," doc. 17, pg. 2 (Apr. 18,

2013). A fair reading of Mr. Driscoll's report, however, is that it sets out recommendations to improve the opportunity for successful entry into the job market. Mr. Driscoll did not opine that plaintiff *required* a job coach or additional supervision before she would be able to work at all. Rather, he merely indicated the assistance of a job coach or a vocational rehabilitation counselor "would benefit", "may benefit", or "will likely be helpful" to plaintiff. (Tr. 218, 219). The strongest language Mr. Driscoll used in regard to the assistance of a job coach was in describing plaintiff's abilities to read and write in English when he opined, "[a] job coach *may* be required" presumably (given the section in which it was written) to perform work involving reading and writing. (*Id.* 219) (emphasis added). In a later section, Mr. Driscoll wrote Ms. Black had "some issues that will require accommodation for an expectation of success . . . these are explored in more detail in the accommodations section of this report." (*Id.* 220). The "accommodations" section is where Mr. Driscoll made his statements about plaintiff potentially benefitting from the assistance of a job coach. (*See id.* 119). The fact an employee might benefit from the assistance of a job coach could be said of a number of people, disabled or not. In response to questioning by plaintiff's attorney at the ALJ hearing, the vocational expert testified that if a person could not work without a job coach, he or she could not keep the job. (Tr. 41). Critically, Mr. Driscoll's report never indicated plaintiff <u>could only work</u> with the assistance of a job coach but instead only stated plaintiff would benefit from such guidance. The "may benefit" language provides little insight into the severity of plaintiff's impairments or how they impact plaintiff's ability to work and falls short of raising a question about whether plaintiff requires special accommodations because of her ADHD and depression.

Moreover, Mr. Driscoll listed a number of "both feasible and realistic" jobs plaintiff was capable of performing. (*Id.* 120). In fact, two of the jobs listed by Mr. Driscoll, those of bagger and dining room attendant, are the same as two of the jobs listed by the ALJ in his determination that

plaintiff was no longer disabled. (*Id.* 17, 220). Given the similarity of the conclusions by the ALJ in reliance on the vocational expert and the conclusions of Mr. Driscoll, the Court cannot hold that, if the ALJ had discussed Mr. Driscoll's report, his determination would have changed. *See Mays*, 837 F.2d at 1364. Stated differently, even if the ALJ had discussed Mr. Driscoll's report, the resulting disability determination would have been the same, i.e., that plaintiff is capable of performing a significant number of jobs in the national economy.[3] *See id.*

This conclusion is further strengthened in light of the other evidence relied upon by the ALJ in making his determination. The ALJ discussed, weighed, and analyzed every medical report written by every examining and consulting medical professional. The reports of these professionals generally supported the ALJ's conclusions. Specifically, in his Psychiatric Review Technique of plaintiff, Dr. Murray Lerner, an agency doctor evaluating the reports of Dr. William Klienpeter (a clinical psychologist who examined plaintiff) concluded, "unskilled work: clmt. is able to carry out simple instructions, take simple decisions, understand, remember and concentrate for extended periods, interact with other people, and respond to changes." (Tr. 299 [sic throughout]). The ALJ additionally, and accurately, discussed the continued effectiveness of plaintiff's medicines, the "multiple examinations that reflect [Ms. Black] was doing well," and the fact that Ms. Black's "attending and treating sources consistently noted her concentration and attention was fair." (*Id.* 14-16). The ALJ also discussed any part of the medical record that might tend to go against any portion of his finding. (*See id.*). The ALJ, in fact, "gav[e] [Ms. Black] the benefit of all doubt" and imposed limitations on plaintiff greater than what the agency doctor found, i.e. a residual functional capacity

---

[3] The Court's conclusion that Mr. Driscoll's report would have little effect on the outcome of the case also implicates whether the ALJ erred by not discussing the report. The guiding statement from the Commissioner indicates the ALJ should discuss evidence from "other sources," such as Mr. Driscoll, "when such opinions may have an effect on the outcome of the case." SSR 06-03p at 7. If the report would not have effected the outcome of the case, it would appear under the ruling as though the ALJ did not err in failing to discuss it. *See id.*

(RFC) limited by an assessment that plaintiff was only able to understand, remember, and carry out simple tasks. (*Id.* 12). Substantial evidence supports the ALJ's determination. *See Martinez*, 65 F.3d at 174.

Plaintiff contends the ALJ should have incorporated the findings of Mr. Driscoll's report into the RFC. This argument assumes, however, that an RFC limitation for benefitting from a job coach is required or even appropriate. Plaintiff has offered nothing supporting this proposition. *Contra* 20 C.F.R. § 404.1545(a) (establishing the RFC is "the most [a claimant] can still do despite [his or her] limitations"); *Dahl v. Colvin*, No. C13-385 MJP, 2013 WL 5738913 (W.D. Wash. Oct. 21, 2013) ("to the extent that [the consultative neuropsychological examiner] also suggested . . . a job coach would be 'the best approach' to handle Plaintiff's vocational transition, these non-imperative recommendations need not be incorporated into an RFC assessment, which describes the most a claimant can do despite limitations."). Moreover, Mr. Driscoll himself concluded plaintiff was capable of working a variety of jobs, two of which were jobs the ALJ found plaintiff could work, even given the "job coach" issue. Remanding this case for the ALJ to address a report that, in large part, was consistent with the ALJ's determinations is not warranted. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (holding remand was appropriate where a report not addressed by the ALJ would suggest, in contradiction to the ALJ's findings, that the plaintiff was disabled).

Accordingly, even if the ALJ should have discussed the recommendations in the vocational report that plaintiff would benefit from the utilization of a job coach, substantial evidence supports the ALJ's determination. *See Morris*, 864 F.2d at 335. The substantial rights of plaintiff have not been affected. *See Mays*, 837 F.2d at 1364.

## V.
## RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff CHANDELL RANEE BLACK no longer disabled and not entitled to continuing disability benefits be AFFIRMED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____7th_____ day of March, 2014.

*[signature]*
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).